IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| OWEN COUTURE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO: |
| v. | ) _____ |
| | ) |
| EQUIFAX INFORMATION SERVICES LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

# COMPLAINT

1. This is an action for damages brought by an individual consumer, Owen Couture ("Mr. Couture" or "Plaintiff"), against Defendant Equifax Information Services LLC ("Equifax" or "Defendant") for several violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA").

2. Mr. Couture has been trying to obtain credit only to be thwarted by Defendant at nearly every turn. Mr. Couture believes that his credit file may be mixed with the credit file of another individual, and he has tried repeatedly to obtain his credit report from Defendant to find out why he is being denied credit. But each time, Defendant has failed to provide him with the information. Defendant's failure has left Mr. Couture in the untenable situation of being unable to obtain credit

because of Defendant, but not knowing why he is being denied and being unable to fix any issues in Defendant's credit reports. Defendant's actions have caused Mr. Couture substantial damage, including the denial of credit opportunities and significant emotional distress.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

4. Venue is proper in this Court under 28 U.S.C. § 1391 as Defendant is headquartered in and regularly conduct business in this district, including contracting to supply goods and services in this district.

## PARTIES

5. Mr. Couture is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

6. Defendant is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(u).

7. Defendant regularly conducts business in the Northern District of Georgia.  Defendant has a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309-2402.

## GENERAL FACTUAL BACKGROUND

*Equifax and the "Mixed File"*

8. Congress enacted the FCRA to protect consumers from the harm caused by inaccurate reporting. To that end, the FCRA requires that credit reporting agencies such as Equifax, in preparing a consumer report, must "follow reasonable procedures to assure maximum possible accuracy of the information" in the report. 15 U.S.C. § 1681e(b).

9. The FCRA also affords to consumers the critical right to dispute inaccurate or incomplete information in their consumer reports. The FCRA requires that upon receiving notice from a consumer that the consumer disputes the accuracy or completeness of any item of information in the consumer's file, Equifax follow specific requirements, including:

   a. conduct a reasonable reinvestigation of the disputed information to determine if the information is accurate;

   b. notify the source of the information of the dispute within five days;

   c. provide the source with all relevant information received from the consumer;

   d. review and consider all relevant information provided by the consumer in conducting the reinvestigation;

  e. delete or modify information that is found to be inaccurate or incomplete, or that cannot be verified;

  f. complete the reinvestigation within 30 days; and

  g. send the consumer written results of the reinvestigation and a credit report that is based on the consumer's file as that file is revised as a result of the reinvestigation. 15 U.S.C. § 1681i(a).

10. A major problem with Equifax's procedures is the "mixed file." A mixed file is placing information belonging to one consumer into the file or credit report of a different consumer. In some cases, the two consumers are merged together so there is one file for both consumers.

11. Equifax's procedures for matching consumer information to a consumer file regularly result in the mixing of one consumer with another.

12. Mixed files create a false description of a consumer's credit history. Further, mixed files result in the consumer not obtaining credit or other benefits of our economy.

13. Consumers with mixed files often have their confidential personal and financial information wrongfully disclosed when the other consumer is seeking credit, and have their confidential information disclosed to the other person. This

violates the consumer's privacy and also greatly increases their risk of identity theft.

14. Mixed files are not a new phenomenon. Equifax has been aware of mixed files for more than 35 years. *See Thompson v. San Antonio Retail Merchants Ass'n,* 682 F.2d 509 (5th Cir. 1982).

15. Equifax creates mixed files occur despite that every consumer has unique personal identifying information, such as a Social Security number. That is so because Equifax's matching logic allows information to be included in a consumer's file even when the Social Security number reported with the information is different than the Social Security number on the consumer's file.

16. Equifax knows its matching procedures are causing inaccurate credit reports and mixed files.

17. In the 1990's, the Federal Trade Commission ("FTC") filed a lawsuit against Equifax because of its failure to comply with the FCRA, including the mixing of consumers' files.

18. In the 1990's, the Attorneys General of a number of states filed a lawsuit against Equifax because of its failure to comply with the FCRA, including the mixing of consumers' files.

19. In 1992, Equifax signed an Agreement of Assurances with the State Attorneys General, and agreed to take specific steps to prevent the occurrence of mixed files and to adopt procedures designed specifically to reinvestigate consumer disputes resulting from mixed files.

20. In 1995, Equifax signed a Consent Order with the FTC. To prevent the occurrence of a mixed file, Equifax agreed not to place information in a consumer's file (other than certain public record information) unless it has identified such information by at least two of the following identifiers: (i) the Consumer's name; (ii) the Consumer's Social Security Number, (iii) the Consumer's date of birth, (iv) the Consumer's account number with a Subscriber or a similar identifier unique to the Consumer.

21. Equifax continues to repeatedly mix consumers' files despite its agreements with the FTC and State Attorneys General, and hundreds of lawsuits filed against it by consumers whose files have been mixed.

22. Over the last ten years, Equifax has been sued hundreds of times by consumers whose files were mixed with a different consumer by Equifax.

23. When those lawsuits have gone to trial, juries have found that Equifax has willfully violated the FCRA, and awarded punitive damages of $2.7 million and $18.2 million. Yet, Equifax continues to commit these same violations.

24. Despite federal law, Congressional mandates, federal and state government enforcement actions, and hundreds of consumer lawsuits, Equifax's mixed files remain a significant problem for consumers.

25. Plaintiff believes he may be a victim of Equifax's mixed file problem.

26. Additionally, the FCRA entitles consumer to know the information contained in their credit files.  CRAs are required, upon request, to "clearly and accurately disclose to the consumer all information in the consumer's file at the time of the request…"  15 U.S.C. § 1681g(a).  Defendant failed to comply with Section 1681g(a) despite many requests from Mr. Couture for the information in his file.

27. As a result of Defendant's failure to comply with the FCRA, Mr. Couture seeks actual and punitive damages, as well as costs of suit and attorneys' fees.

### FACTS RELATING SPECIFICALLY TO PLAINTIFF

28. Mr. Couture has been trying to obtain a credit card, purchase an automobile, and purchase a home.

29. Nearly every time that Mr. Couture submitted an application for credit, his application has been denied because of Defendant's response to the creditor's request for Mr. Couture's credit report.

30. To try to figure out why his credit applications were being denied, Mr. Couture contacted Defendant.

31. Defendant told Mr. Couture that his social security number was attached to a credit file that contained a name other than Owen Couture, and he would have to send Defendant proof of his identity before it would correct the information in his file.

32. Mr. Couture faxed to Defendant a copy of his driver's license and social security card, as well as a cover letter informing Defendant that "[t]he issue I have been trying to fix is that in your files my social security number is used with another file owner. So I have been told after 6 months of trying to resolve the issue."

33. Several days later, Mr. Couture received a letter from Defendant informing him that it had investigated the matter and that it would not correct any information in the credit report.

34. Defendant did not conduct the FCRA-mandated reinvestigation into Mr. Couture's dispute.

35. Once Mr. Couture received Defendant's letter, he called Defendant to find out why it would not correct the report and to make sure that it had received the driver's license and social security card that he had sent. Defendant informed Mr.

Couture that it could not locate the information in its files and that he would need to send the information again.

36. Mr. Couture again sent to Defendant his driver's license and social security card.

37. And again, Defendant failed to conduct the FCRA-mandated reinvestigation into Mr. Couture's dispute and correct the credit report.

38. Mr. Couture followed up with Defendant more than twenty times, both via telephone calls and via fax. But Defendant continued to fail to provide him with a copy of his credit report and to correct his credit report.

39. Mr. Couture even enlisted his bank – Digital Federal Credit Union - to try to get Defendant to correct his credit report in 2019. Digital Federal Credit Union took Mr. Couture's information and sent to Defendant the information necessary for Defendant to correct Mr. Couture's credit file. But again, Defendant failed to take corrective action.

40. As a result of Defendant's failures to comply with numerous requirements of the FCRA, Mr. Couture has been unable to move forward with his life, including moving out of his parents' house and obtaining a home of his own. He has had to deal with Defendant reporting inaccurate information about him, trying to correct the information with Defendant, Defendant refusing to correct the

information, and Defendant failing to provide Mr. Couture with the information in his credit file.

## FIRST CLAIM FOR RELIEF

### (Negligent Noncompliance with the FCRA)

41. Plaintiff realleges and incorporates paragraphs 1 through 40.

42. Defendant negligently failed to comply with the requirements of the FCRA.

43. As a result of Defendant's failure to comply with the requirements of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

44. Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681o(a).

## SECOND CLAIM FOR RELIEF

### (Willful Noncompliance with the FCRA)

45. Plaintiff realleges and incorporates paragraphs 1 through 40.

46. Defendant willfully failed to comply with the requirements of the FCRA.

47. As a result of Defendant's failure to comply with the requirements of FCRA, plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

48. Plaintiff requests attorney fees pursuant to 15 U.S.C. § 1681n(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. Actual damages;
2. Punitive damages;
3. Attorneys' fees; and
4. Costs of the action

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATED: August 21, 2020

By: /s/ Andrew Weiner
 Andrew L. Weiner
 Jeffrey B. Sand
 WEINER & SAND LLC
 800 Battery Avenue SE
 Suite 100
 Atlanta, Georgia 30339
 (404) 254-0842 (Tel.)
 (404) 205-5029 (Tel.)
 (866) 800-1482 (Fax)
 aw@atlantaemployeelawyer.com
 js@atlantaemployeelawyer.com

 COUNSEL FOR PLAINTIFF